UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PUTIAN AUTHENTIC ENTERPRISE MANAGEMENT CO., LTD., et al., | Case No.  5:22-cv-01901-EJD |
| Plaintiffs, | **ORDER DENYING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| META PLATFORMS, INC., | Re: Dkt. No. 25 |
| Defendant. | |

Plaintiffs Putian Authentic Enterprise Management Co., Ltd, Fuzhou Haina Hongyi Network Technology Co., Ltd, Fuzhou Baidai Network Technology Co., Ltd., Nanchang Huimeng Network Technology Co., Ltd., Suzhou Chenghe Network Technology Co., Ltd. filed this action asserting the following claims against Defendants Meta Platforms, Inc. ("Meta") and Does 1-10: (1) declaratory judgment under 28 U.S.C. § 2201; (2) intentional interference with a contract; (3) intentional interference with prospective economic advantage; (4) promissory estoppel; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; (7) unlawful and unfair conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (8) negligence.  Compl., Dkt. No. 1.

The Court previously denied Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction for failure to show irreparable harm.  Order Denying Mot. for TRO and Prelim. Inj. ("TRO Order"), Dkt. No. 17.  Plaintiffs now renew their motion seeking a Court order enjoining Defendants from denying Plaintiffs access to their Facebook Business Manager accounts.  Mem. of Law in Supp. of Plfs.' Renewed Mot. for TRO and Prelim. Inj. ("Renewed

Case No.: 5:22-cv-01901-EJD
ORDER DENYING RENEWED MOT. FOR TRO

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Mot."), Dkt. No. 25.  Meta opposes.  Def. Meta Platform Inc.'s Opp'n to Plfs.' Renewed Mot. for

2   TRO ("Renewed Opp'n"), Dkt. No. 27.

3        The Court finds this matter suitable for decision without oral argument pursuant to Civil

4   Local Rule 7-1(b).  Having considered the parties' moving papers, the Court DENIES the motion

5   for a TRO with prejudice.

6   **I.      BACKGROUND**

7        **A.      The Parties and Their Relationship**

8        Plaintiffs are social media marketing companies whose businesses are based on providing

9   clients access to Meta's marketing tools and audience on the Facebook social media platform.

10  Decl. of Chen Xin in Supp. of Mot. for TRO and Prelim. Inj. ("Chen Decl."), Dkt. No. 6 ¶¶ 7-10.

11  They act as "middlemen" for e-commerce vendors and Meta by purchasing ad space from Meta

12  and then reselling it to the vendors, and as such, are "utterly reliant on the Meta advertising

13  platform."  *Id.*; *see also* Second Decl. of Chen Xin in Supp. of Renewed Mot. for TRO and Prelim

14  Inj. ("Second Chen Decl."), Dkt. No. 20 ¶ 16 ("Under Plaintiffs' business model, Plaintiffs

15  purchase ad space from resellers, who may work directly with Meta.")

16       The parties agree that Meta's Terms of Service govern their relationship.  *See* Renewed

17  Mot. at 20; Renewed Opp'n at 4–5; Reply Mem. of Law in Supp. of Plfs.' Renewed TRO Mot.

18  ("Renewed Reply"), Dkt. No. 30, at 12.  The Terms of Service state in relevant part:

19           You therefore agree not to engage in the conduct described below
20           (or to facilitate or support others in doing so):

21           1. You may not use our Products to do or share anything:

22           •   That violates these Terms, our Community Standards, and
                 other terms and policies that apply to your use of our
23               Products.

24           •   That is unlawful, misleading, discriminatory or fraudulent.
         . . .
25       We can remove or restrict access to content that is in violation of
         these provisions.
26       If we remove content that you have shared in violation of our
         Community Standards, we'll let you know and explain any options
27       you have to request another review, unless you seriously or
         repeatedly violate these Terms . . . .

28  Case No.: 5:22-cv-01901-EJD
    ORDER DENYING RENEWED MOT. FOR TRO
                                  2

1    Decl. of Raymond LaMagna in Supp. of Def. Meta's Opp'n to Renewed TRO Mot. ("LaMagna

2    Decl."), Dkt. No. 27-2, Ex. 1 at 5 (Section 3.2).  The Terms of Service further state:

3              If we determine that you have clearly, seriously or *repeatedly*
             breached our Terms or Policies, including in particular our
4              Community Standards, *we may suspend or permanently disable*
             *access to your account*. . . . Where we take such action, we'll let you
5              know and explain any options you have to request a review, unless
             doing so may expose us or others to legal liability; harm our
6              community of users; [or] compromise or interfere with the integrity
             or operation of any of our services, systems or Products . . . .
7

8    *Id.*, Ex. 1 at 7–8 (Section 4.2; emphases added).

9              The Terms of Service also expressly incorporate other terms and policies.  *Id.*, Ex. 1 at 9,

10   10 (Sections 4.5.2, 5).  Relevant and applicable to Plaintiffs are Meta's Commercial Terms,

11   Advertising Policies, and Self-Serve Ad Terms.  *Id.*, Ex. 1 at 10 (Section 5).

12             The Commercial Terms apply to access or use of Meta Products for the purpose of using

13   ads.  They state: "You agree that you will ensure that any third party on whose behalf you access

14   or use any Meta Product for any business or commercial purpose will abide by the applicable

15   terms of use, including these Commercial Terms, the Meta Terms of Service . . ., and any

16   applicable supplemental terms . . . ."  *Id.*, Ex. 2 at 1.

17             Meta's Advertising Policies prohibit certain kinds of ads, including those that violate the

18   Community Standards; enable a user to engage in cheating or deceitful practices; contain

19   deceptive, false, or misleading claims; or promote products, services, schemes or offers using

20   deceptive or misleading practices, including those meant to scam people out of money.  *Id.*, Ex. 3

21   at 2–5 (Sections 4.1, 4.2, 4.15, 4.22, 4.25).  The Advertising Policies expressly state: "Beyond

22   enforcing our policies on individual ads, violations of our terms and policies may result in further

23   enforcement actions, such as disabling Ad Accounts, Business Managers and/or individual user

24   accounts."  *Id.*, Ex. 3 at 2 (Section 2).  The Advertising Policies further state that Plaintiffs are

25   responsible for ensuring that each advertiser complies with the Advertising Policies.  *Id.*, Ex. 3 at

26   11 (Section 12.5).

27             Similarly, Meta's Self-Serve Ad Terms require compliance with all applicable laws,

28   Case No.: 5:22-cv-01901-EJD
     ORDER DENYING RENEWED MOT. FOR TRO

United States District Court
Northern District of California

regulations, and guidelines, as well as the Advertising Policies, and "[f]ailure to comply may result in a variety of consequences, including the cancellation of ads you have placed and termination of your account."  *Id.*, Ex. 4 at 1 (Section 2).  Furthermore,

> If you are placing ads on someone else's behalf, you must have permission to place those ads, and agree as follows:
>
> a. You represent and warrant that you have the authority to and will bind the advertiser to these Self-Serve Ad Terms and the Terms of Service, and the Commercial Terms, to which you also agree.
>
> b. If the advertiser you represent violates these Self-Serve Ad Terms, the Terms of Service, or the Commercial Terms, we may hold you responsible for that violation.

*Id.*, Ex. 4 at 3 (Section 14).

### B.     Deactivation of Plaintiffs' Accounts

On December 10, 2021, Plaintiffs became aware that Meta intended to "banhammer" their Facebook Business Manager accounts for "perpetuating misleading e-commerce, celeb bait and business impersonation via an abuse pattern we call agency scaling."  Chen Decl. ¶ 24; LaMagna Decl., Ex. 5 at 2.  Plaintiffs retained counsel, who then served a demand letter on Meta regarding what Plaintiffs believed was arbitrary and capricious enforcement of Meta's Terms of Service and requesting "an opportunity for a hearing."  Chen Decl. ¶ 25; LaMagna Decl., Ex. 5 at 2.  The demand letter further stated, "If we are not given an immediate opportunity to be heard by Facebook regarding this proposed ban, we will pursue all available legal rights and remedies, including but not limited to seeing a temporary restraining order and injunctive relief from the court, along with seeking damages for the harm caused to our Clients and related parties by Facebook's improper actions in this matter."  LaMagna Decl., Ex. 5 at 2.

Plaintiffs received no response from Meta until March 14, 2022, when Meta sent a letter to Plaintiffs' counsel stating: "Meta has completed its investigation into this matter and determined your clients have violated Meta's terms and policies.  More specifically, each of your clients are responsible for deceptive and misleading advertisements on Facebook that violate Meta's terms and policies."  *Id.*, Ex. 6 at 2.  On March 22, 2022, Meta shut down Plaintiffs' Business Manager

United States District Court
Northern District of California

1  accounts.  Chen Decl. ¶¶ 17-21.

2      **C.**    **Procedural Background**

3      On March 24, 2022, Plaintiffs filed this action and their first motion seeking a TRO.  Dkt.

4  Nos. 1, 4.  The Court denied the first TRO motion for failure to demonstrate irreparable harm.

5  TRO Order, Dkt. No. 17.  On March 28, 2022, Plaintiffs filed additional declarations and a

6  renewed motion seeking a TRO, which the Court struck for non-compliance with the Civil Local

7  Rule 7-2(b)'s page limits.  Dkt. Nos. 19, 20, 21, 24.  On March 29, 2022, Plaintiffs re-filed the

8  amended renewed TRO motion now before the Court.  Dkt. No. 29.

9  **II.**    **LEGAL STANDARD**

10      The standard for a TRO is the same as for a preliminary injunction.  *See Stuhlbarg Int'l*

11  *Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking

12  either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer

13  irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

14  and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d

15  1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20

16  (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

17  showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

18      To grant preliminary injunctive relief, a court must find that "a certain threshold showing

19  [has been] made on each factor."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per

20  curiam).  Assuming that this threshold has been met, "serious questions going to the merits and a

21  balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

22  injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and

23  that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

24  1135 (9th Cir. 2011) (internal quotation marks omitted).

25  **III.**    **DISCUSSION**

26      The Court previously held that Plaintiffs had not demonstrated irreparable harm.  TRO

27  Order at 3–5.  The factual and legal landscape have changed in the last few weeks.  Plaintiffs have

28  Case No.: 5:22-cv-01901-EJD

now offered additional evidence to bolster their assertions of irreparable harm in an attempt to

cure what the Court previously found was an evidentiary deficiency.  Specifically, Plaintiffs

provide two additional declarations from their Chief Operating Officer, Chen Xin, and a

declaration from their customer service representative, Jieli Liang.  Additionally, on April 18,

2022, the Ninth Circuit issued its opinion in *hiQ Labs, Inc. v. LinkedIn Corp.*, --- F.4th ---, 2022

WL 1132814 (9th Cir. Apr. 18, 2022).  Plaintiffs rely on the Ninth Circuit's earlier decision in that

case, 938 F.3d 985, 993 (9th Cir. 2019), which the Supreme Court vacated in *LinkedIn Corp. v.*

*hiQ Labs, Inc.*, 141 S. Ct. 2752 (2021).  Renewed Mot. at 14.  Meta does not address *hiQ* at all.

Regardless, even if Plaintiff's new evidence sufficiently demonstrates irreparable harm

under *hiQ*, the Court finds that Plaintiffs have not demonstrated a likelihood of success on the

merits on any of their claims.  The Court addresses each claim in turn.

### A.      Intentional Interference with Contract

To succeed on a tortious interference with contract claim, a plaintiff must demonstrate:

"(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract;

(3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual

breach or disruption; and (5) resulting damage."  *Name.Space, Inc. v. Internet Corp. for Assigned*

*Names and Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (quoting *Family Home & Fin. Ctr., Inc.*

*v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)).  "[A] plaintiff must

establish an underlying enforceable contract evidencing a formally cemented economic

relationship."  *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002,

1011–12 (N.D. Cal. 2013) (internal quotation marks omitted).

Here, Plaintiffs have not sufficiently demonstrated the existence of any valid contracts

enforceable under California law.  Plaintiffs do not provide copies of any formal contracts; they

offer only screenshots of text message complaints from certain customers.  Those screenshots

indicate the existence of some kind of business relationship, but it is not clear which customers

have relationships with which Plaintiffs.  Three of these customers stated that they would

"terminate cooperation" with Plaintiffs.  Second Chen Decl. ¶ 7, Ex. I; Decl. of Jieli Liang in

Case No.: 5:22-cv-01901-EJD

ORDER DENYING RENEWED MOT. FOR TRO

6

Supp. of Renewed Mot. for TRO and Prelim Inj. ("Liang Decl."), Dkt. No. 21 ¶ 6, Ex. U. Plaintiffs assert that this phrase "refers to the existence of a contractual business relationship between the parties." Renewed Reply at 11 n.4. However, they provide no support for that assertion from any source, not even the translator who certified translations of their exhibits. The Court is left to construe Plaintiffs' assertion as attorney argument. Even taking Plaintiffs at their word, they provide no details of those contracts beyond a general exchange of money for ad space. "The terms of a contract on paper, with no evidence that any parties agreed to those terms, do not prove the existence of a valid contract." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005).

In addition, an intentional interference claim will not arise if "the defendant's conduct consists of something which he had an absolute right to do." *Neal v. Select Portfolio Servicing*, *Inc.*, No. 5:16-CV-04923-EJD, 2017 WL 4224871, at *4 (N.D. Cal. Sept. 22, 2017) (citing *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 996 (1977); internal quotation marks omitted). Meta's Terms of Service, Commercial Terms, Advertising Policies, and Self-Serve Ad Terms all make clear that fraudulent and misleading conduct is prohibited, that Plaintiffs are responsible for any fraudulent or misleading ads from its clients, and that repeated violations may result not only in the removal of the fraudulent or misleading ads but also termination of Plaintiffs' accounts. LaMagna Decl., Exs. 1-4. These are the grounds for account deactivation laid out in Meta's March 14, 2022 letter. *Id.*, Ex. 6. Meta has submitted evidence that Plaintiffs' clients advertised in a fraudulent or misleading manner, that multiple accounts managed by Plaintiffs were deactivated as "business integrity scams," and that since December 2019, Meta disabled over 1,400 accounts managed by Plaintiffs for policy or intellectual property violations. Decl. of Sam Winters in Supp. of Def. Meta's Opp'n to TRO Mot., Dkt. No. 27-1 ¶¶ 6-16. Plaintiffs effectively concede that the examples of problematic ads Meta submitted with its opposition were indeed potentially fraudulent or misleading and acknowledge that Meta disabled at least 1,443 out of Plaintiffs' 21,400 accounts since December 2019. Third Decl. of Chen Xin in Supp. of Renewed Mot. for TRO and Prelim Inj., Dkt. No. 20-1 ¶¶ 9-14, 26. Because Plaintiffs and many of their

United States District Court
Northern District of California

1    clients appear to have violated Meta's terms and policies, Meta was within its rights under the

2    parties' agreement to terminate Plaintiffs' accounts.

3          Accordingly, Plaintiffs have not demonstrated a likelihood of success on their claim for

4    intentional interference with a contract.

5          **B.    Intentional Interference with Prospective Economic Advantage**

6          A tortious interference with prospective economic advantage claim has the same elements

7    as a claim for tortious interference with a contract (focusing instead on the existence and

8    knowledge of a prospective economic relationship), but also requires that the defendant's conduct

9    be 'wrongful by some legal measure other than the fact of interference itself.'"  *Name.Space*, 795

10   F.3d at 1133 (quoting *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)

11   (internal quotation marks omitted)).  Courts have made clear that "[t]he law precludes recovery for

12   overly speculative expectancies by initially requiring proof" that it is "reasonably probable that the

13   prospective economic advantage would have been realized but for defendant's interference."

14   *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019) (internal

15   quotation marks omitted).

16         Here, Plaintiffs have not offered any evidence of any specifically identified prospective

17   business deal or relationship that Meta's deactivation of their Business Manager accounts

18   thwarted.  Plaintiffs assert that they "had prospective economic relationships with [current e-

19   commerce vendor clients] and new clients" but do not cite to any such evidence.  Renewed Mot. at

20   18.  Instead, they point only to portions of Chen's first and second declaration that generally

21   describe past customers, not future customers.  The text message complaints from past or current

22   customers do not refer to any particular future business deals that were cancelled as a result of the

23   deactivation.  *See* Second Chen Decl, Ex. I; Liang Decl., Exs. T, U, V, W.

24         Accordingly, Plaintiffs have not demonstrated a likelihood of success on their claim for

25   intentional interference with prospective economic advantage.

26         **C.    Promissory Estoppel**

27         A claim for promissory estoppel requires the establishment of the following four elements:

28   Case No.: 5:22-cv-01901-EJD
     ORDER DENYING RENEWED MOT. FOR TRO

United States District Court
Northern District of California

1    "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the

2    promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting

3    the estoppel must be injured by his or her reliance." *Cockrell v. Wells Fargo Bank, N.A.*, No. 13-

4    cv-02072-SC, 2013 WL 3830048, at *1 (N.D. Cal. July 23, 2013); *see also Boon Rawd Trading*

5    *Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010).

6        Plaintiffs contend that they plead a claim for promissory estoppel in the alternative to their

7    claim for breach of contract.  Renewed Reply at 11; *see also* Renewed Mot. at 18 ("To the extent

8    the Court concludes that certain parts of the parties' relationship were not governed by contract,

9    the principle of equitable estoppel applies.").  Plaintiffs argue that because Meta "rarely

10   substantiated any of the deactivation notices it sent to Plaintiffs . . . [t]his course of conduct

11   reasonably led Plaintiffs to believe that deactivation notices were frequently erroneously

12   distributed and only acted upon after substantial review and further notice."  Renewed Mot. at 19.

13   But as Plaintiffs acknowledge, Meta's "deactivation notices referred to e-commerce vendor

14   accounts, not the [Business Manager] Accounts, and Meta "not once took any action to deactivate

15   or otherwise restrict access to the [Business Manager] Accounts." *Id.*  If that is true, it is difficult

16   to understand how Plaintiffs could infer a course of dealing as to the Business Manager accounts

17   when they purportedly relied upon a course of dealing that concerned only the vendor accounts.

18       "A plaintiff may not state a claim for promissory estoppel where a valid contract,

19   supported by consideration, governs the same subject matter as the alleged promise." *Funai*

20   *Electric Co., Ltd. v. LSI Corp.*, No. 16-CV-01210-BLF, 2017 WL 1133513, at *10 (N.D. Cal.

21   Mar. 27, 2017) (citing *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal.

22   2009)).  Here, Meta's Terms of Service and accompanying terms and policies are the express

23   contract that governs the parties' relationship and the manner and method in which Meta could

24   terminate Plaintiffs' Business Manager accounts.  Plaintiffs' attempt to plead in the alternative

25   necessarily fails. *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) ("In sum, either KFC

26   was in breach of contract or it was not.  That should be the end of the matter.  Promissory estoppel

27   is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the

28   Case No.: 5:22-cv-01901-EJD
     ORDER DENYING RENEWED MOT. FOR TRO

United States District Court
Northern District of California

1    apple in the event it fails to prove a breach of contract.").

2        Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their

3    promissory estoppel claim.

4        **D.    Breach of Contract**

5        Under California law, a plaintiff asserting a breach of contract claim must plead the

6    following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for

7    nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.

8    *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008), *as modified on denial of*

9    *reh'g* (Feb. 5, 2008) (citing *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas. Co.*, 116 Cal.

10   App. 4th 1375, 1391, nn.6, 11 (2004)).

11       Plaintiffs assert that Meta's Terms of Service create a contractual relationship, but that

12   nothing in the Terms of Service permits Meta to "arbitrarily revoke access to the Meta platforms."

13   Renewed Reply at 12.  Plaintiffs' attempt to distinguish between the Terms of Service and the

14   Self-Serve Ad Terms is unavailing, as the Terms of Service incorporate the Self-Serve Ad Terms

15   and Advertising Policies—both of which expressly contemplate the possible termination of

16   Plaintiffs' Business Manager Accounts.  LaMagna Decl., Ex. 1 at 10 (Section 5); *id.*, Ex. 3 at 2

17   ("Beyond enforcing our policies on individual ads, violations of our terms and policies may result

18   in further enforcement actions, such as disabling Ad Accounts, Business Managers and/or

19   individual user accounts."); *id.* Ex. 4 at 1 ("Failure to comply may result in a variety of

20   consequences, including the cancellation of ads you have placed and termination of your

21   account.").  At any rate, the Terms of Service themselves explicitly address account suspension or

22   termination and permit Meta to suspend or terminate accounts without notice or review in certain

23   circumstances.  *Id.*, Ex. 1 at 7–8 ("If we determine that you have clearly, seriously or repeatedly

24   breached our Terms or Policies, including in particular our Community Standards, we may

25   suspend or permanently disable access to your account. . . . Where we take such action, we'll let

26   you know and explain any options you have to request a review, unless doing so may expose us or

27   others to legal liability; harm our community of users; [or] compromise or interfere with the

28

*United States District Court*
*Northern District of California*

integrity or operation of any of our services, systems or Products . . . .").  As described above, Meta has submitted evidence of repeated violation of the Terms of Service and Meta's other terms and policies by Plaintiffs' customers, for whom Plaintiffs are also responsible under those same terms and policies.  *See supra* Section III.A.  The evidence the parties have provided tends to show that it is Plaintiffs who have apparently breached the parties' contract, not Meta.[1]

Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their breach of contract claim.

### E.        Breach of the Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing [is] implied by law in every contract, [and] exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).  "[T]he factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (internal citations omitted).

For the reasons described above, it does not appear that Plaintiffs fulfilled their obligations under the parties' contract, and that Meta's purported "interference" with Plaintiffs' rights to receive the benefits of the parties' agreement by terminating their accounts was expressly contemplated by the contract itself.  *See supra* Section III.D.  Furthermore, while a plaintiff may bring claims for both breach of contract and breach of the implied covenant, when both claims rely

---

[1] Plaintiffs also assert a claim for declaratory judgment, seeking a declaration that "declaration that they have not violated any policy articulated within any of Defendant's various TOS or Advertising Guidelines."  Compl. ¶ 48.  Plaintiffs chose not to address this claim for relief in their motion.  Renewed Mot. at 16 ("Because Plaintiffs' first claim is for declaratory relief, that claim is not addressed here.").  However, because the Court finds that there is evidence suggesting that Plaintiffs did breach the parties' agreement, Plaintiffs have also failed to demonstrate a likelihood of success on their declaratory judgment claim.

Case No.: 5:22-cv-01901-EJD
ORDER DENYING RENEWED MOT. FOR TRO
11

United States District Court
Northern District of California

1  on the same alleged acts and seek the same relief, the Court may disregard the breach of the

2  implied covenant claim as superfluous.  *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716

3  (N.D. Cal. 2014) (citing *Guz*, 24 Cal. 4th at 327).

4       Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their

5  implied covenant claim.

6      **F.**    **UCL**

7       California Business and Professions Code § 17200 prohibits "any unlawful, unfair or

8  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

9  Plaintiffs' briefing is somewhat unclear on whether they are asserting a UCL claim under the

10  unlawful prong or the unfair prong.  *Compare* Renewed Mot. at 22–23 (discussing "unlawful" acts

11  "in violation of antitrust laws") *with* Renewed Reply at 14 ("Plaintiffs' claim related to antitrust

12  principles arises under the unfairness prong . . . .").  The Court looks to the allegations in the

13  complaint, which plead the unfair prong based on antitrust principles and the unlawful prong claim

14  based on Plaintiffs' tortious interference and implied covenant claims.  Compl. ¶¶ 100-101.  As to

15  the unlawful prong claim, the Court has already determined that, based on the record before it,

16  Plaintiffs are not likely to succeed on their tortious interference and implied covenant claims, and

17  therefore they are correspondingly unlikely to success on a UCL claim based on the unlawful

18  prong as pled.  *See supra* Section III.A, B, E.

19       As to the unfair prong claim, Plaintiffs assert, "Meta is using its dominant position and

20  presence as the operator of the world's largest social media platform in order to assume exclusive

21  proprietary control over public data not owned by the Defendant, and to arbitrarily and

22  capriciously deactivate business manager accounts for [its] own benefit."  Renewed Mot. at 22.  It

23  is unclear what "public data" is at issue here—presumably Plaintiffs' clients have ownership over

24  the information in their ads.  Additionally, it is difficult to understand how Meta can exercise

25  "monopolistic control" when only Meta's products are at issue, much less how Facebook qualifies

26  as "a facility . . . that is essential to competitors."  *Id.* at 22–23.  Most significant, Plaintiffs do not

27  cite to a single piece of evidence to support their claims of antitrust activity.  *See* Renewed Mot. at

28  Case No.: 5:22-cv-01901-EJD
ORDER DENYING RENEWED MOT. FOR TRO

22–23; Renewed Reply at 14.  To the extent Plaintiffs' allegations about Meta's deactivation of accounts "for [its] own benefit" is based on Paragraphs 33-34 of Chen's first declaration, those paragraphs are nothing more than Chen's opinion.  Chen Decl. ¶¶ 33-34 ("In my opinion and based on my personal knowledge . . . .").  Chen does not explain the basis of any purported personal knowledge, and therefore these opinions amount to nothing more than speculation unsupported by any factual evidence.

Plaintiffs have not demonstrated a likelihood of success on the merits of their UCL claim.

### G.      Negligence

Plaintiffs allege a claim of negligence under California law.  To prevail on a claim for negligence, Plaintiffs must demonstrate (1) Meta owed Plaintiffs a duty, (2) a breach of that duty, (3) causation, and (4) damages.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).  The general rule in California is that all persons have a duty "to use ordinary care to prevent others being injured as a result of their conduct."  *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968).  In determining whether to impose a legal duty, courts consider the factors set forth in *Rowland v. Christian*, including:

> foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* at 113.  Plaintiffs also invoke California Civil Code § 1714(a).  Renewed Mot. at 23.  Section 1714 primarily concerns providing alcoholic beverages to minors, but subsection (a) states in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."  Cal. Civ. Code § 1714(a).

Plaintiffs assert that "Meta owed the Plaintiffs a duty of ordinary care and skill by virtue of

United States District Court
Northern District of California

United States District Court
Northern District of California

1  [a] special relationship between them created by the position of power enjoyed by the Defendant's

2  control of Facebook and the BM Account generally."  Renewed Mot. at 23.  Despite repeatedly

3  referring to a "special relationship," Plaintiffs cite no case law or evidence supporting the

4  existence of any such special relationship in these circumstances outside the Terms of Service and

5  other applicable terms and policies.  *Id.* at 22–23; Renewed Reply at 14.  The California Supreme

6  Court has noted that "the special relationship test"—which arises in an insurance context—"has

7  been criticized as illusory and not sufficiently precise . . . ."  *Erlich v. Menezes*, 21 Cal. 4th 543,

8  552–53 (1999).  "[C]ourts will generally enforce the breach of a contractual promise through

9  contract law," and "the mere negligent breach of a contract" will not ordinarily sound in tort.  *Id.*

10  at 552 (internal quotation marks and citation omitted).

11  Even if Meta owed Plaintiffs a duty beyond the confines of the parties' written agreement,

12  Plaintiffs do not substantiate a breach of that duty.  According to Plaintiffs, "Meta breached this

13  duty to exercise ordinary care and skill with regards to their administration of the Plaintiffs'

14  [Business Manager] Accounts when they arbitrarily, capriciously, and willfully encouraged

15  employees to falsify pretenses with which to deactivate mature [Business Manager] Accounts as

16  part of the Defendant's pervasive profit driven culture."  Renewed Mot. at 23–24.  As with

17  Plaintiffs' UCL claim under the unfair prong, Plaintiffs fail to provide any evidence to support that

18  contention beyond Chen's opinion and conjecture.  *See supra* Section III.F.

19  In conclusion, the Court finds that Plaintiffs have not demonstrated a likelihood of success

20  on the merits of any of their claims.  When a plaintiff has failed to show a likelihood of success on

21  the merits, the Court need not consider the remaining *Winter* factors.  *Garcia v. Google, Inc.*, 786

22  F.3d 733, 740 (9th Cir. 2015).  Mandatory injunctions such as the one Plaintiffs seek are

23  disfavored, and they therefore must satisfy a higher burden of "establish[ing] that the law and facts

24  *clearly favor* [their] position . . . ."  *Id.* (emphasis original).  Plaintiffs have not done so here.

25  ///

26  ///

27  ///

28  Case No.: 5:22-cv-01901-EJD
ORDER DENYING RENEWED MOT. FOR TRO

IV.     **CONCLUSION**

For the foregoing reasons, the Court DENIES the motion for a TRO with prejudice.

**IT IS SO ORDERED.**

Dated: April 19, 2022

EDWARD J. DAVILA
United States District Judge